2005-NMCA-038

110 P.3d 512

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Hugh LACKEY, Defendant–Appellant.**

**No. 24,355.**

Court of Appeals of New Mexico.

Feb. 9, 2005.

Certiorari Granted, No. 29,110, April 4, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

Richard A. Hawthorne, Richard A. Hawthorne, P.A., Ruidoso, NM, for Appellant.

---

## OPINION

VIGIL, Judge.

{1} Defendant contends there was no reasonable suspicion to stop the vehicle in which he was a passenger. We agree. Therefore, we reverse the district court's denial of his motion to suppress.

## FACTS

{2} On June 5, 2002, Officer Laurence Kauz of the New Mexico State Police was dispatched to investigate a one-vehicle accident on Cedar Creek Drive near the Village of Ruidoso. Tim Harvey, a sergeant with the New Mexico State Police, also responded to the accident in his own vehicle. When they arrived, they found that a 1985 Chevrolet truck had run off the road, gone through the safety barrier, and landed in a ditch. It appeared that the right front suspension was wrecked. The driver of the vehicle was not present and there were no witnesses to the accident. The State Police officers were joined by an officer of the Ruidoso Police Department who came in a third police vehicle.

{3} Shortly after the State Police officers began their investigation, a pickup truck with two passengers slowly drove by the accident scene. The truck continued for 200 or 300 yards down the hill, turned around, and drove by the accident scene again. According to Sergeant Harvey, the passenger was "rubbernecking" each time the truck passed the scene of the accident. Sergeant Harvey ordered the truck to be stopped because something was "suspicious." When asked why he was "suspicious," he said that in fifteen years of training and experience "it has become knowledge I guess you might call it that a subject that has been involved in a crash that is under the influence will leave the scene in order to attempt from being arrested for the DWI." Officer Kauz added, "[i]t seemed they had more than a casual interest in the accident. So, we thought they knew something about the accident." If the truck had not stopped when it was ordered to do so it would have been pursued and forced to stop.

{4} Officer Kauz questioned the occupants after the truck was stopped, and he determined that the truck was being driven by Richard Malone, a neighbor of Defendant. In response to subsequent questioning from Officer Kauz, Defendant admitted the 1985 Chevrolet truck was his and that he was driving it at the time of the accident. Officer Kauz noted that Defendant had bloodshot, watery eyes and smelled of alcohol. In response to further questions, Defendant admitted to Officer Kauz that he had consumed three or four beers earlier in the evening. After field sobriety tests were administered, Defendant was arrested at 10:30 p.m. Analysis of blood drawn from Defendant at 12:05 a.m. the following morning showed that his blood alcohol concentration exceeded the legal limit. *See* NMSA 1978, § 66–8–102(C)(1) (2004) ("It is unlawful for ... a person who has an alcohol concentration of eight one hundredths or more in his blood or breath to drive a vehicle within this state.").

{5} Defendant argued during trial that reasonable suspicion to stop the vehicle was lacking, and on this basis, moved to suppress all evidence obtained as a result of the stop. The motion was denied, and Defendant was convicted of driving while intoxicated. Defendant appeals.

**STANDARD OF REVIEW**

■ {6} Whether the district court correctly ruled on Defendant's motion to suppress is a question we review "to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Cline,* 1998–NMCA–154, ¶ 6, 126 N.M. 77, 966 P.2d 785. However, when the facts "are not in dispute, we review only the legal conclusions of the trial court." *State v. Contreras,* 2003–NMCA–129, ¶ 4, 134 N.M. 503, 79 P.3d 1111. Whether the officers had reasonable suspicion to stop the vehicle Defendant was riding in is a legal question we review de novo. *State v. Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**DISCUSSION**

■ {7} The Fourth Amendment of the United States Constitution protects the people of the United States against unreasonable searches and seizures by the government. U.S. Const. amend. IV. The New Mexico Constitution also protects the people against unreasonable searches and seizures. N.M. Const. art. II, § 10. However, because Defendant has not argued that the New Mexico Constitution affords him greater protection than the United States Constitution, we review his appeal only under the Fourth Amendment. *See State v. Jason L.,* 2000–NMSC–018, ¶ 9, 129 N.M. 119, 2 P.3d 856; *State v. Walters,* 1997–NMCA–013, ¶ 9, 123 N.M. 88, 934 P.2d 282 (stating that because the defendant "advances no separate analysis under the New Mexico Constitution, nor does he argue that the state constitution affords any greater protection in this respect than the United States Constitution" the court will "limit [its] analysis to the Fourth Amendment").

■ {8} "The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of [a] vehicle." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Therefore, before a "police officer may stop a vehicle ... he [must have] reasonable suspicion that a law has been or is being violated." *State v. Pallor,* 1996– NMCA–083, ¶ 12, 122 N.M. 232, 923 P.2d 599; *see Cortez,* 449 U.S. at 417, 101 S.Ct. 690. A police officer has reasonable suspicion to stop a vehicle when he becomes "aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Urioste,* 2002–NMSC– 023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted). To determine whether a police officer has reasonable suspicion, we must consider the "totality of the circumstances." *Id.* ¶ 6.

■ {9} The circumstances in this case simply do not amount to reasonable suspicion to stop the truck occupied by Defendant. Neither Sergeant Harvey nor Officer Kauz testified that they believed that Defendant or Mr. Malone was committing or had committed a criminal act. Sergeant Harvey's testimony regarding the fact that DWI suspects frequently leave the scene of an accident is unavailing. He observed Defendant returning to the scene not leaving the scene; no evidence was presented to suggest that Defendant's return to the scene was consistent with someone who had previously been driving while intoxicated. *Cf. State v. Guzman,* 118 N.M. 113, 115, 879 P.2d 114, 116 (Ct.App.1994) (holding that stop was lawful, in part, because of the officer's knowledge "that deodorants are often used to mask the odor of illegal drugs or substances"). Due to the absence of specific, articulable facts that Defendant was engaged or had been engaged in wrongdoing, Sergeant Harvey did not have reasonable suspicion to order the vehicle in which Defendant was riding to be stopped. *See Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

{10} In support of its argument that the officers had reasonable suspicion, the State refers us to *People v. Hobson,* 117 Ill.App.3d 191, 72 Ill.Dec. 518, 452 N.E.2d 771 (1983). In *Hobson,* three sheriff's reserve officers

were dispatched to keep the curious away from a gravel pit and dumping area where two dead bodies had been discovered. *Id.* at 774. At about 11:30 p.m., the officers noticed a small pickup truck drive slowly by the gravel road that led to the dumping area. *Id.* Fifteen minutes later, the officers observed the pickup pass slowly by again, this time in the opposite direction. *Id.* Approximately forty-five minutes later, the pickup drove slowly by the gravel pit a third time. *Id.* After the vehicle's third pass, one of the officers stopped the vehicle. *Id.* The driver of the vehicle was subsequently identified as a suspect in the death of the persons whose bodies had been found in the gravel pit. *Id.* at 775–76. The Illinois Court of Appeals held that the stop of the defendant was a proper investigative stop. *Id.* at 779.

{11} The circumstances surrounding Sergeant Harvey's order to stop the vehicle in this case differ significantly from the circumstances in *Hobson.* The defendant in *Hobson* drove by three times "late at night when the ordinary individual would have no legitimate reason to visit the dump." *Id.* Neither Sergeant Harvey nor Officer Kauz testified that it was unusual for a car to be driving on Cedar Creek Road when they first observed Defendant. Further, there were three police cars with their lights flashing at the scene of the accident. Officer Kauz admitted that slowing down to gawk or rubberneck at an accident scene is a common behavior among drivers and was not, by itself, suspicious. His own suspicion was not aroused until the vehicle made a second pass. A second pass of the scene may have indicated any number of things ranging from knowledge about the accident, familiarity with the vehicle, or just plain curiosity.

{12} On similar facts, the Idaho Supreme Court, in *State v. Wixom*, 130 Idaho 752, 947 P.2d 1000, 1002 (1997), and the Arizona Supreme Court, in *State v. Richcreek*, 187 Ariz. 501, 930 P.2d 1304, 1308 (1997) (en banc), have also concluded that the police did not have reasonable suspicion to stop a defendant. In *Wixom*, 947 P.2d at 1001, police responded to a report of a single-car accident. The car had struck a mailbox, gone through a fence, and come to a stop in a field.

*Id.* When officers arrived at the scene, the driver was no longer there. *Id.* As the officers began to investigate, they noticed a pickup truck drive slowly by the scene of the accident. *Id.* One of the officers stopped the truck to determine if its occupants could provide any information about the accident. *Id.* The defendant, who was the passenger in the pickup, admitted to driving the car found in the field and was subsequently arrested for driving under the influence. *Id.* The Idaho Supreme Court upheld the district court's grant of the defendant's motion to suppress, in part, because the police "did not have a reasonable suspicion that the persons in the pickup were involved in any criminal activity." *Id.* at 1002.

{13} Similarly, in *Richcreek*, police also responded to a single-car accident. 930 P.2d at 1305. When the police arrived at the scene, the driver of the car was not there. *Id.* The police began to search for injured passengers and otherwise investigate the scene. *Id.* As they did so, the officers noticed a car approach the scene, slow almost to a stop, and pull over to the side of the road before driving away. *Id.* One of the officers at the scene thought that the driver of the car could have been the absent driver of the wrecked car or someone who knew the driver. *Id.* Therefore, the officer stopped the car. *Id.* Following the stop of the car, the police learned that the car was stolen and arrested the driver. *Id.* at 1306. The Arizona Supreme Court held that the evidence obtained pursuant to the stop should be suppressed because "the forced stop of an automobile without the least articulable suspicion of criminal activity is an unconstitutional seizure under the Fourth Amendment." *Id.* at 1308.

{14} The only significant factual difference between the case before us and *Wixom* and *Richcreek* is that Defendant passed by the scene of the accident twice. The Idaho and Arizona Supreme Courts held that passing slowly by the scene of an accident once is not enough for reasonable suspicion of criminal activity because the bare fact of an accident does not indicate that the accident was caused by criminal activity. We agree with their conclusions and do not believe that a

second pass of the scene alone is sufficiently indicative of criminal activity to support a finding of reasonable suspicion. While a second pass might indicate, as the officers testified, more than a casual interest in the accident, that does not mean that the accident was criminally caused, such as would allow the officers to intrude on Defendant by stopping him.

{15} The State also argues that the stop of the vehicle Defendant was riding in was justified under the community caretaking exception to the warrant requirement. Because the police were entitled to search the abandoned 1985 Chevrolet to determine the identity of its owner, the State argues that it could also stop Defendant to determine if he was the owner of the vehicle. We are unpersuaded.

{16} A "police officer may stop a vehicle for a specific, articulable safety concern, even in the absence of reasonable suspicion that a violation of law has occurred or is occurring." *Apodaca v. State ex rel. Taxation and Revenue Dep't*, 118 N.M. 624, 626, 884 P.2d 515, 517 (Ct.App.1994); *see State v. Reynolds*, 117 N.M. 23, 25, 868 P.2d 668, 670 (Ct.App.1993), *rev'd on other grounds*, 119 N.M. 383, 890 P.2d 1315 (1995). For example, in *Apodaca*, we held that, under the community caretaker exception, a police officer had lawfully stopped a motorcycle that he had observed weaving in its lane of traffic. *Id.* at 626, 884 P.2d at 517. Although the driver of the motorcycle had not violated any traffic laws, "[w]eaving like that described by the officer could well result from a driver's attempting to retain control of his motorcycle, or to resist the effects of drowsiness, illness, or a similar problem." *Id.* Therefore, we held that the officer had not violated the constitutional rights of the driver by stopping him "to ascertain whether he needed assistance." *Id.* Similarly, in *Reynolds*, a police officer stopped a pickup truck that was carrying three passengers on its tailgate. 117 N.M. at 25–26, 868 P.2d at 670–71. We held that the officer could lawfully stop the pickup truck to inform the driver that the passengers riding on the tailgate of the truck needed to be seated in the bed of the truck with the tailgate closed. *Id.* Unlike the police

officers in *Apodaca* and *Reynolds*, neither Sergeant Harvey nor Officer Kauz testified that they were concerned about the safety or well-being of Defendant or Mr. Malone. Therefore, we find, as did the Idaho court, that the stop of the vehicle Defendant was riding in does not fall within the community caretaker exception to the warrant requirement. *See Wixom*, 947 P.2d at 1002.

{17} Further, the State's attempt to analogize the stop to opening the glove box of the vehicle to determine the identity of its owner is unpersuasive. Even if we accept the State's assertion Sergeant Harvey and Officer Kauz could have lawfully searched the wrecked 1985 Chevrolet, stopping Defendant implicates substantially different interests than opening the glove box of an abandoned and wrecked 1985 Chevrolet. And because Sergeant Harvey and Officer Kauz did not have a specific, articulable safety concern about Defendant or the vehicle in which he was riding, they could not lawfully stop the vehicle under the community caretaker exception.

## CONCLUSION

{18} We hold that Sergeant Harvey did not have a reasonable suspicion to order a stop of the vehicle Defendant was riding in. As a result, the stop was an unlawful seizure under the Fourth Amendment. Therefore, we reverse the district court's denial of Defendant's motion to suppress. We remand with instructions to grant the motion to suppress and for such further proceedings as may be warranted.

{19} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and JAMES J. WECHSLER, Judges.