2006-NMCA-062

136 P.3d 579

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Virgil WILLIAMS, Defendant–Appellant.**

No. 25,031.

Court of Appeals of New Mexico.

April 10, 2006.

Certiorari Denied, No. 29,785,
June 2, 2006.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

**OPINION**

CASTILLO, Judge.

{1} In this case, we must determine if an individual's Fourth Amendment rights are implicated when a law enforcement officer requests a driver's license from the driver of a parked car. Because a reasonable person, in these circumstances, would not feel free to disregard the police officer's request for a driver's license, we conclude that Defendant was detained and that the detention must be justified by individualized reasonable suspi-

cion. We also conclude that before requesting the driver's license, the officer did not have specific, articulable facts to create an individualized reasonable suspicion of criminal activity on the part of Defendant. Accordingly, we reverse the district court's denial of Defendant's motion to suppress.

## I. BACKGROUND

{2} Officer Brad Riley, the arresting officer, was the only witness presented at the hearing on the motion to suppress; the following facts derive primarily from his testimony. At about 10 p.m., Officer Riley was driving down Avenue L, in the usual manner of patrol during his shift. As he approached the residence at 402 West Avenue L, he observed the vehicle in which Defendant was sitting, a black Suburban, parked on the side of the street in front of the residence. This residence was the home of Pedro Contreras, an individual who had outstanding felony warrants. Officer Riley, in previous attempts to locate Mr. Contreras, had been to this residence several times before. On this particular evening, Officer Riley observed Defendant's vehicle and saw "someone leaning in from the passenger side into the vehicle." Officer Riley could not see who was driving the vehicle or determine the gender of the individual leaning into the vehicle from the passenger side.

{3} When Officer Riley saw the vehicle, he turned around and pulled in behind it without engaging his overhead emergency lights. The vehicle was not illegally parked. Officer Riley saw no illegal activity. He saw what he considered to be suspicious activity because someone was "leaning into a vehicle in front of the residence" of Mr. Contreras. Officer Riley concluded that this activity, coupled with the hour, about 10 p.m., was suspicious. After he notified the dispatcher, Officer Riley got out of his patrol car and approached the vehicle to see if Mr. Contreras was the driver. Officer Riley knew as soon as he saw Defendant, prior to the request for a driver's license, that Defendant was not Mr. Contreras because Officer Riley knew Mr. Contreras by sight. Nevertheless, Officer Riley "went up and made contact with the driver, asked for his driver's license,

some type of identification to identify him." After asking Defendant for his driver's license, Officer Riley recognized the person leaning into the vehicle as Cheryl Montgomery, an individual who, according to Officer Riley, was "a known user of illegal drugs" and was usually in possession of drugs or paraphernalia.

{4} When Defendant was unable to provide Officer Riley with a driver's license, Defendant identified himself verbally by name and date of birth. Officer Riley then used that information to "run a driver's license check to make sure [Defendant] could operate a motor vehicle," since he "was in operation and control of the vehicle and said he had driven there." Officer Riley also ran a warrant check on Defendant and Ms. Montgomery. Defendant overheard the radio dispatcher notifying Officer Riley that a possible warrant existed. At that point, Defendant began to move around in the vehicle, and Officer Riley told him not to reach for anything. Officer Riley then asked Defendant to get out of the vehicle and advised him that he was being detained until it was determined whether the warrant did exist. Officer Riley placed Defendant in handcuffs and seated him in the patrol car. Defendant was placed under arrest when the warrant was confirmed; Officer Riley completed a search incident to arrest and found drugs in the car.

{5} Defendant was charged with violations of NMSA 1978, § 30–31–22 (2005), distribution of a controlled substance, and NMSA 1978, § 30–31–25.1 (2001), possession of drug paraphernalia. At the pretrial conference, Defendant questioned the validity of the stop in an oral motion to suppress. The district court, ruling from the bench, denied the motion:

> In this particular case, I believe that the officer was able to articulate at each juncture the reasoning that was justifiable and constitutionally permitted for his contact with the car. Upon given [sic] his description of the area, the time, the address, his extensive experience both with the occupant, allegedly, of a residence and then with the woman that was there, I think he took proper steps.

Once he determined that there was no driver's license and these other issues were present, the outstanding warrant, I think he made an appropriate constitutionally permitted search, and the motion to suppress is denied.

Defendant reserved his right to appeal the denial of his motion to suppress when he entered a conditional guilty plea.

## II. DISCUSSION

### A. Standard of Review

{6} Appellate review of a motion to suppress is a mixed question of fact and law. *State v. Reynolds,* 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995). We review the facts under a substantial evidence standard, in a manner most favorable to the prevailing party, and we review de novo the application of law to the facts. *Id.; State v. Boeglin,* 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App. 1983). Since the facts here are undisputed, we review only the district court's application of law to those facts. *State v. Gutierrez,* 2004–NMCA–081, ¶ 4, 136 N.M. 18, 94 P.3d 18. We review de novo whether reasonable suspicion existed to justify Defendant's initial detention. *State v. Lackey,* 2005–NMCA–038, ¶ 6, 137 N.M. 296, 110 P.3d 512.

### B. Fourth Amendment Protections

{7} Defendant argues that his rights under the Fourth Amendment of the United States Constitution were violated; he does not argue that the New Mexico Constitution provides greater protection. Thus, we examine the circumstances presented here only under Fourth Amendment standards. *Lackey,* 2005–NMCA–038, ¶ 7, 137 N.M. 296, 110 P.3d 512.

{8} The Fourth Amendment protects an individual from unreasonable seizures and searches. U.S. Const. amend. IV. Reasonableness is determined by balancing the intrusion on an individual's Fourth Amendment rights against the government's legitimate interests. *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Reynolds,* 119 N.M. at 385, 890 P.2d at 1317. The facts used to justify an intrusion must be measurable by an objective standard because an individual's reasonable expectation of privacy cannot be at the mercy of a field officer's discretion. *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (noting that the protection of an individual's Fourth Amendment rights from an officer's "unfettered discretion" is a central concern in balancing the competing interests of government and individual liberty); *Prouse,* 440 U.S. at 654–55, 99 S.Ct. 1391.

{9} Not all police-citizen encounters are seizures subject to the Fourth Amendment. *State v. Javier M.,* 2001–NMSC–030, ¶ 36, 131 N.M. 1, 33 P.3d 1. Consensual encounters, those in which a citizen feels free to leave, generally do not implicate constitutional protections. *Id.; State v. Morales,* 2005–NMCA–027, ¶ 10, 137 N.M. 73, 107 P.3d 513. The State contends that Officer Riley's encounter with Defendant was consensual. We disagree.

### C. Consensual Encounter Versus Seizure

{10} Our Court of Appeals, in *State v. Walters,* 1997–NMCA–013, 123 N.M. 88, 934 P.2d 282, discussed consensual encounters:

The test for determining if a police-citizen encounter is consensual depends on whether, under the totality of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. The test is an objective one based upon a reasonable person standard, not the subjective perceptions of the particular individual. The test presumes an innocent reasonable person. In making this determination, the court should consider the sequence of the officer's actions and how a reasonable person would perceive those actions. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred.

*Id.* ¶ 12 (internal quotation marks and citations omitted).

{11} When an officer communicates to an individual that he is not free to refuse the officer's request, the encounter is not consensual. *See id.* It becomes a seizure that must be justified by reasonable suspicion. An officer may approach a person to ask questions or request identification, without any basis for suspecting that particular individual, "as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *State v. Jason L.*, 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d 856.

## 1. Totality of the Circumstances

{12} Generally, a court examines the officer's actions, in the totality of the circumstances, to ascertain whether the officer used physical restraint or exhibited a show of authority that would prevent a reasonable person from feeling free to leave. *See State v. Baldonado*, 115 N.M. 106, 108, 110, 847 P.2d 751, 753, 755 (Ct.App.1992).

> The determination of a seizure has two discrete parts: (1) what were the circumstances surrounding the stop, including whether the officers used a show of authority; and (2) did the circumstances reach such a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave? The first part is a factual inquiry, which we review for substantial evidence. The second part is a legal inquiry, which we review de novo.

*Jason L.*, 2000–NMSC–018, ¶ 19, 129 N.M. 119, 2 P.3d 856.

{13} In evaluating whether a reasonable person would feel free to leave, we look to three factors: (1) the police conduct, (2) the person of the individual citizen, and (3) the physical surroundings existing at the time of the encounter. *Id.* ¶ 15.

### a. The Officer's Conduct

{14} In our case, Officer Riley, while in the course of his regular patrol, observed Defendant's vehicle legally parked on the side of the street. Officer Riley saw "someone leaning in from the passenger side into the vehicle." He did not observe any illegal activity, but he was suspicious because it was late, about 10 p.m., and a person was leaning into a vehicle that was parked in front of a residence belonging to an individual with outstanding warrants. After passing Defendant's vehicle, Officer Riley turned around in the street and pulled up behind the vehicle, without engaging his emergency lights. He notified dispatch that he was going to be out with a vehicle; then he "got out of [his] car, went up and made contact with the driver, [and] asked for [Defendant's] driver's license." There were no preliminary questions; Defendant did not initiate the encounter, and the officer did not begin the encounter "in a conversational manner." *See* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 426 (4th ed.2004) (internal quotation marks and citation omitted).

### b. The Defendant's Person

{15} Defendant is clearly a "driver" under New Mexico law. NMSA 1978, § 66–1–4.4(K) (1999), defines "driver" as "every person who drives or is in actual physical control of a motor vehicle, including a motorcycle, upon a highway, who is exercising control over or steering a vehicle being towed by a motor vehicle or who operates or is in actual physical control of an off-highway motor vehicle." An individual is in actual physical control of a vehicle when he has direct influence over the vehicle. *State v. Johnson*, 2001–NMSC–001, ¶ 19, 130 N.M. 6, 15 P.3d 1233. In other words, a person has actual physical control over the vehicle when he is in a situation in which he can directly begin to operate the vehicle. *Id.* Moreover, a person who is in actual physical control of a moving or nonmoving vehicle is "operating" a motor vehicle. UJI 14–4511 NMRA; *see State v. Laney*, 2003–NMCA–144, ¶ 40, 134 N.M. 648, 81 P.3d 591 (discussing the UJI 14–4511 "operating" instruction, which relies on the definition of "driver" used in Section 66–1–4.4(K)). Further, "[e]very licensee shall have his driver's license in his immediate possession ... when operating a motor vehicle and shall display the license upon demand of [an] officer." NMSA 1978, § 66–

5–16 (1985). Finally, the definitions of "operating" and "driver" do not distinguish between a moving vehicle and a nonmoving vehicle; the driver of a nonmoving vehicle, one who is in actual physical control, is operating a vehicle and is required to display a license on demand, just as the driver of a moving vehicle is required to produce a license when he has been validly stopped. *See id.;* § 66–1–4.4(K); UJI 14–4511; *see also* NMSA 1978, § 66–1–4.13(E) (1990) (" '[O]perator' means driver, as defined in Section 66–1–4.4[.]"). Thus, Defendant was a driver who was required to produce a driver's license if an officer made such a request.

#### i. Drivers of Moving Vehicles

{16} New Mexico courts have previously held that the driver of a moving vehicle, detained by a valid stop, is not free to leave when asked to produce a driver's license. *Reynolds,* 119 N.M. at 385, 890 P.2d at 1317 (asking "whether [the officer's] request for identification was justified at its inception" (internal quotation marks and citation omitted)); *see State v. Affsprung,* 2004–NMCA–038, ¶ 15, 135 N.M. 306, 87 P.3d 1088 (holding that a passenger is not free to leave and refuse an officer's request for identification in the context of an ordinary traffic stop because the driver is not free to refuse an officer's request for identification and documentation). Thus, a request for license, registration, and documents of the driver of a moving vehicle is a seizure. *Reynolds,* 119 N.M. at 384–85, 890 P.2d at 1316–17 (using a seizure analysis to determine whether the officer could ask for a driver's license); *Affsprung,* 2004–NMCA–038, ¶ 15, 135 N.M. 306, 87 P.3d 1088 ("[T]he driver is not free to refuse an officer's request for identification and documentation[.]"). Although the circumstances in *Reynolds* and *Affsprung* involve stops of moving vehicles, we believe that these cases provide guidance in the circumstances of our case. Under New Mexico law, Defendant is a driver and is subject to the same laws as a driver of a moving vehicle. We conclude that Defendant in this case, a driver of a nonmoving vehicle, was not free to leave when the officer, without preamble, requested a driver's license because a driver of a vehicle, moving or nonmoving, is required by law to produce a driver's license on demand.

#### ii. Drivers of Nonmoving Vehicles

{17} Section 66–5–16 does not distinguish between a driver of a moving vehicle and a driver of a nonmoving vehicle. If an individual is in the driver's seat of a vehicle, he is subject to Section 66–5–16; thus, when an officer, without more, requests a driver's license, the driver is not free to leave, and the encounter is not consensual. It would be incongruous for us to hold that the Fourth Amendment provides greater protections for an individual in a moving vehicle than it provides for an individual in a nonmoving vehicle. This would encourage drivers of parked cars to start driving when they see an officer approaching because only then would the officer be required to have reasonable suspicion to request a driver's license. To hold that a driver of a nonmoving vehicle, who must produce a driver's license and registration upon request and await the officer's completion of a check to ensure those documents are valid, is in a consensual encounter would be to take the concept of consensual encounters into the realm of a legal fiction. *See Affsprung,* 2004–NMCA–038, ¶ 17, 135 N.M. 306, 87 P.3d 1088 ("We think it more fiction than fact to call this encounter consensual."). A driver, whether in a moving vehicle or a nonmoving vehicle, is not free to leave when an officer requests a driver's license or a registration certificate in these circumstances.

#### c. Physical Surroundings of the Encounter

{18} It was around 10 p.m., and Officer Riley did not see any illegal activity. He did not testify about any other persons or vehicles that were present in the area at the time of the initial encounter. Thus, we conclude that there were no other persons or vehicles of interest in the near vicinity.

#### 2. Evaluation of Totality of the Circumstances

{19} Considering the totality of the circumstances—including Officer Riley's con-

duct, Defendant's status as a driver, and the lack of other persons or vehicles of interest in the vicinity at the time—we conclude that an innocent, reasonable person would believe that Officer Riley had stopped to ask for Defendant's driver's license pursuant to Officer Riley's statutory authority. *See Walters,* 1997–NMCA–013, ¶ 12, 123 N.M. 88, 934 P.2d 282. Although the State relies on the fact that Officer Riley did not engage his lights, we do not find this dispositive. *Cf. Baldonado,* 115 N.M. at 109, 847 P.2d at 754 (stating that the use of emergency lights does not preclude a consensual encounter): We believe that the circumstances here fall closer to the seizure side of the spectrum described by this Court in *Baldonado:*

> By way of example, we believe that a trial court should ordinarily find a stop that must be justified by reasonable suspicion whenever officers pull up behind a stopped car, activate their lights, and approach the car in an accusatory manner, asking for license and registration and an account of the occupants' activities. On the other hand, a trial court should ordinarily find no stop whenever officers pull up behind a stopped car, activate their lights, and approach the car in a deferential manner asking first whether the occupants need help.

*Id.* at 110, 847 P.2d at 755.

{20} In our case, Officer Riley did not engage his lights because he had no need to use them; Defendant was already stopped, and there were no safety concerns reported by Officer Riley. Defendant did not initiate the encounter, and Officer Riley asked no preliminary questions. His first statement to Defendant was a request for a driver's license. Based on the facts of this case, we believe that Officer Riley approached Defendant as if Officer Riley were conducting a traffic stop and asked for his driver's license pursuant to his statutory authority; a reasonable person would not feel free to leave, even though Officer Riley had not engaged his emergency lights. *Cf. id.* at 108, 847 P.2d at 753 ("[A] trial court could find, based on what is on an officer's mind together with surrounding circumstances, that if the officer believes that the defendants are not free to

leave it may be more likely that the defendants would feel that they are not free to leave."). Moreover, Section 66–5–16 does not include language that limits the driver's responsibility to produce a driver's license to those incidents in which an officer is using his emergency lights. As a driver, Defendant was not free to terminate the encounter by refusing the officer's request under these circumstances.

{21} The State also argues that Defendant was free to leave because the officer was not holding Defendant's license and that there was no evidence presented that the officer was holding any other documents. *See United States v. Elliott,* 107 F.3d 810, 814 (10th Cir.1997) (concluding that an encounter, which was initially a traffic stop, became consensual after the officer returned the defendant's documents). We disagree. Such a driver would not feel free to leave because the driver is not free to refuse to respond to an inquiry about his driver's license. *Affsprung,* 2004–NMCA–038, ¶ 14, 135 N.M. 306, 87 P.3d 1088 ("The law with respect to ordinary traffic stops and concomitant de minimus [*sic*] investigatory detention is fairly well settled in New Mexico. A driver should not, and, we believe, does not feel free to refuse to respond to an officer's inquiry about license, registration, and insurance."). Moreover, a failure to provide a driver's license in response to the officer's request would result in a statutory violation. *See* § 66–5–16. We now turn to the facts surrounding the incident in order to determine whether there was reasonable suspicion justifying the request for Defendant's driver's license.

**D. Reasonable Suspicion**

{22} A reasonableness standard governs the exercise of discretion by law enforcement in order to protect an individual's privacy and security against arbitrary invasions. *Prouse,* 440 U.S. at 653–54, 99 S.Ct. 1391. The two-part test in *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is used to determine the reasonableness of a traffic stop or an investigatory stop. *State v. Duran,* 2005–NMSC–034, ¶ 23, 138 N.M. 414, 120 P.3d 836; *Mor-*

*ales,* 2005–NMCA–027, ¶ 14, 137 N.M. 73, 107 P.3d 513. Here, we are concerned with the first question presented by *Terry:* Was the detention justified at its inception? *See Reynolds,* 119 N.M. at 385, 890 P.2d at 1317. To detain a driver for the purpose of checking his license and registration, the officer must have articulable and reasonable suspicion. *Prouse,* 440 U.S. at 663, 99 S.Ct. 1391.

{23} Reasonable suspicion must be based on objective facts that indicate an individual is, or will be in the immediate future, engaged in criminal activity. *State v. Urioste,* 2002–NMSC–023, ¶ 10, 132 N.M. 592, 52 P.3d 964; *State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994). These facts must be specific, articulable, and particular to the individual who is detained. *Jason L.,* 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856; *State v. Patterson,* 2006–NMCA–037, ¶¶ 16, 17, 139 N.M. 322, 131 P.3d 1286 (using the term "individualized suspicion" to refer to articulated, particular reasonable suspicion); *Morales,* 2005–NMCA–027, ¶ 14, 137 N.M. 73, 107 P.3d 513. In examining the reasonableness of an officer's suspicion, we objectively consider the totality of the circumstances, including all the information the officer possessed at the time. *Morales,* 2005–NMCA–027, ¶ 14, 137 N.M. 73, 107 P.3d 513.

{24} In our case, the State appears to argue that Officer Riley was reasonably called upon to make contact with Defendant because there were outstanding warrants for Mr. Contreras; because Mr. Contreras could have been driving Defendant's vehicle, since it was parked in front of Mr. Contreras's residence; and because there was an individual who was leaning into the passenger side of Defendant's vehicle and talking with the driver. These specific, articulated facts relied upon by the State are not particular to Defendant and thus cannot support the detention of Defendant that occurred when Officer Riley requested a driver's license.

{25} The State presented no specific, articulable facts that Defendant or an occupant of the vehicle was or was about to be engaging in criminal activity at the time Officer Riley requested Defendant's driver's license. *See Prouse,* 440 U.S. at 663, 99 S.Ct. 1391 (stating that reasonable suspicion of an occupant in violation of a law is sufficient to justify the stop of a vehicle); *Lackey,* 2005–NMCA–038, ¶¶ 3, 9, 137 N.M. 296, 110 P.3d 512 (concluding that a lack of specific, articulable facts regarding the defendant's wrongdoing precluded reasonable suspicion when the officer stopped a truck in which the defendant was a passenger because the truck drove slowly past an accident scene two times). Officer Riley observed no traffic violation. His suspicions concerned Mr. Contreras and not Defendant. Although Officer Riley testified that he recognized the individual talking to Defendant from outside of the passenger window as a known user ordinarily in possession of illegal drugs or paraphernalia, Officer Riley testified that he recognized her *after* asking Defendant for a driver's license. We also note that Officer Riley did not testify to specific, articulable facts regarding Ms. Montgomery's activities that would provide reasonable suspicion to detain her; nor did he testify as to her status as a possible occupant of Defendant's vehicle, which could have justified his detention. *See State v. Prince,* 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332 ("Generalized suspicions or unparticularized hunches that a person has been or is engaged in criminal activity do not suffice to justify a detention."). Because Officer Riley did not have individualized reasonable suspicion regarding Defendant, the detention was prohibited by the Fourth Amendment.

{26} The State argues that Officer Riley's request for identification from Defendant was constitutionally permissible because Officer Riley was "reasonably called upon to make contact with Defendant" in order to determine whether another individual, Mr. Contreras, was driving the vehicle. *See Reynolds,* 119 N.M. at 388, 890 P.2d at 1320. In making this argument, the State relies on *Reynolds* and *In re Forfeiture of ($28,-000.00),* 1998–NMCA–029, 124 N.M. 661, 954 P.2d 93. Both cases are distinguishable. In each case, the Court concluded that the initial stop was valid because the officer, at the time the stop was initiated, had specific, articulable facts that the particular defendant was in violation of a specific law or was

engaged in activity that created a safety concern.

{27} In the case *In re Forfeiture of ($28,-000.00)*, the officer had specific, articulable facts about the driver's vehicle that justified the initial stop. The vehicle was in violation of state law, which requires vehicle registration to be clearly visible; the vehicle had no license plate and did not appear to have a temporary tag. 1998–NMCA–029, ¶¶ 11, 12, 124 N.M. 661, 954 P.2d 93; *see* NMSA 1978, § 66–3–18(A) (2005); NMSA 1978, § 66–3–6 (1998). Even though the officer could see that the temporary tag was in place after the stop was initiated but before he asked the driver for identification, this Court held that the initial traffic stop was not arbitrary; thus, the officer's request for identification was constitutionally permissible. *In re Forfeiture of ($28,000.00)*, 1998–NMCA–029, ¶¶ 12, 13, 124 N.M. 661, 954 P.2d 93. At the time the stop was initiated, the officer possessed information that supported his reasonable suspicion that the defendant was driving in violation of the law. *Id.; see Florida v. J.L.*, 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.").

{28} Similarly, in *Reynolds*, the officer had specific, articulable facts about the driver's vehicle that justified the initial stop. The vehicle, a small pickup, was traveling at night on the interstate with three occupants who were sitting on an open tailgate, their feet hanging close to the road. *Reynolds*, 119 N.M. at 384, 890 P.2d at 1316. Because the officer stopped the vehicle for these specific safety reasons, the stop was not arbitrary. *Id.* at 384, 386, 890 P.2d at 1316, 1318. Our Supreme Court held that this was a valid stop, one in which the officer was "reasonably called upon to make contact with a driver"; thus, the request for the driver's identification was permissible. *Id.* at 388, 890 P.2d at 1320.

{29} The State urges us to conclude that here, as with the stop in *Reynolds*, the officer was reasonably called upon to make contact with the driver and that the officer was therefore entitled to check Defendant's license and registration. We decline to extend this general language as a justification for Defendant's detention. As discussed earlier, the test for reasonableness requires, at a minimum, individualized reasonable suspicion. *See Prouse*, 440 U.S. at 663, 99 S.Ct. 1391; *Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868.

{30} We believe the circumstances in this case are more like those presented in *Brown v. Texas*, 443 U.S. at 48–49, 99 S.Ct. 2637. We recognize that unlike in our situation, the defendant in *Brown v. Texas* was a pedestrian, *id.* at 48, 99 S.Ct. 2637; however, the specific facts relied on by the officers in *Brown v. Texas* are very similar to those relied on by Officer Riley in our case. In *Brown v. Texas*, the officers observed the defendant and another man a few feet apart, walking away from each other in an alley located in an area with a high incidence of drug traffic. *Id.* at 48–49, 99 S.Ct. 2637. The officers believed the two men had been together or were about to meet when the officers arrived at the scene. *Id.* at 48, 99 S.Ct. 2637. The officers did not suspect the defendant of any specific misconduct. *Id.* at 49, 99 S.Ct. 2637. The United States Supreme Court held that these circumstances did not create reasonable suspicion to believe that the defendant was engaged or had engaged in criminal activity. *Id.* at 53, 99 S.Ct. 2637. Like the defendant in *Brown v. Texas*, Defendant in our case was in an area in which, arguably, criminal activity sometimes occurs. Defendant was communicating with an individual whose identity was unknown by Officer Riley when he requested Defendant's driver's license. Prior to requesting the driver's license, Officer Riley did not suspect Defendant of any specific misconduct. We conclude that these circumstances, like those in *Brown v. Texas*, "simply do not amount to reasonable suspicion" regarding Defendant. *See Lackey*, 2005–NMCA–038, ¶ 9, 137 N.M. 296, 110 P.3d 512; *see also Patterson*, 2006–NMCA–037, ¶ 28, 139 N.M. 322, 131 P.3d 1286 ("The difficulty with the [s]tate's argument is that it does not point to any facts particular to [the defendant] that would lead to individualized suspicion that he was violating a law. The only fact concerning [the

defendant] was that he was present in the car." (citation omitted)).

{31} The State argues that even if Defendant had been detained when he failed to produce a driver's license, Officer Riley was justified in running a check to see whether Defendant had a valid driver's license. This argument fails because reasonable suspicion must exist to justify the stop at its inception and because, as discussed earlier, the detention of Defendant began when Officer Riley asked for his driver's license. *See Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868; *Jason L.*, 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856 ("The officer cannot rely on facts which arise as a result of the encounter."). The State ignores the distinguishing fact in each case cited to support this proposition—the initial stop in each case was valid. *See United States v. Holt*, 264 F.3d 1215, 1218 (10th Cir.2001) (en banc) (per curiam) ("[The] defendant ... was not wearing a seatbelt."); *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir.2001) ("[The defendant] has not challenged [the officer's] initial stop ... for a window tint violation."); *Duran*, 2005–NMSC–034, ¶ 24, 138 N.M. 414, 120 P.3d 836 ("Defendant does not challenge that [the officer] was justified in making the initial stop[.]"); *Reynolds*, 119 N.M. at 388, 890 P.2d at 1320 ("The initial stop in this case was lawful[.]"); *Affsprung*, 2004–NMCA–038, ¶ 10, 135 N.M. 306, 87 P.3d 1088 ("Following a valid stop, for a traffic violation, an officer may ... check out license, registration, and insurance."); *State v. Romero*, 2002–NMCA–064, ¶ 9, 132 N.M. 364, 48 P.3d 102 ("Certain points are fixed in the legal landscape. After stopping [the d]efendant for speeding, [the o]fficer ... could lawfully detain [the d]efendant to inspect his license[.]").

## III. CONCLUSION

{32} We reverse the denial of Defendant's motion to suppress, and we remand for further proceedings in accordance with this opinion.

{33} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and MICHAEL E. VIGIL, Judges.