This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellant,

v.                                         **NO.  30,031**

**EUGENE HERNANDEZ,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellant

Jacqueline L. Cooper, Acting Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

The State appeals from an order granting Defendant's motion to suppress. We affirm but on different grounds than those relied upon by the district court. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (stating that the appellate court may affirm the district court's decision if it is right for any reason as long as it would not be unfair to the appellant to do so).

## I.    BACKGROUND

At the motion hearing, Deputy Funes testified that, on April 15, 2007, at 2:44 a.m., he was dispatched to investigate a report of shots fired from a pickup truck in a mobile home park in Albuquerque. The dispatch report contained no information or description about the truck, such as license plate number, make, model, or color. The deputy arrived at the mobile home park about thirteen minutes after receiving the dispatch and, after driving around for about five more minutes, stopped the only vehicle he observed—a Mercury SUV. While speaking with the driver, the deputy noticed that Defendant, a passenger in the SUV, was acting very nervous. His hands were shaking, he was breathing fast, and he acted as if "his [a]drenaline was up."

Concerned for his safety, Deputy Funes ordered Defendant out of the vehicle to be patted down for weapons. Defendant was compliant and cooperative while the deputy conducted the pat-down and throughout the investigation. The deputy held

Defendant's thumbs behind his back during the search to maintain control, but Defendant made no aggressive moves.

During the pat-down, Deputy Funes felt something in Defendant's pocket that was clearly not a weapon. He asked Defendant what it was, and Defendant replied that it was a receipt. The deputy told Defendant that the item did not feel like a receipt, and Defendant responded by telling the deputy that it was a receipt, and he could pull it out. The deputy pulled out a baggie containing a white powdery substance that proved to be cocaine. Defendant was indicted on one count of possession of a controlled substance (cocaine). *See* NMSA 1978, § 30-31-23 (2005) (amended 2011).

Defendant moved to suppress the cocaine and any statements resulting from the search, claiming that (1) Deputy Funes did not have reasonable suspicion to initially stop the vehicle; (2) once the vehicle was stopped, the deputy was not justified in ordering Defendant from the car to conduct the pat-down; (3) the deputy exceeded the scope of a pat-down for weapons by investigating the nature of an item that was clearly not a weapon and questioning Defendant about that object; and (4) Defendant's consent to the search was not voluntary. The State responded that the deputy was entitled to act as he did, and Defendant consented to the removal of the

cocaine from his pocket.  The district court conducted a hearing and found that the initial stop was justified, but not the pat-down search.  The State appeals.

## II.    DISCUSSION

### A.    Standard of review

Suppression rulings involve mixed questions of fact and law. *See State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. We defer to the district court's findings of fact to the extent that they are supported by substantial evidence and employ all reasonable presumptions in support of the district court's ruling. *State v. Jason L.*, 2000-NMSC-018, ¶¶ 10-11, 129 N.M. 119, 2 P.3d 856. However, we "review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review." *State v. Patterson*, 2006-NMCA-037, ¶ 13, 139 N.M. 322, 131 P.3d 1286.

### B.    Propriety of Initial Stop

We first consider whether the initial stop was justified at its inception. *See State v. Leyva*, 2011-NMSC-009, ¶ 31, 149 N.M. 435, 250 P.3d 861. In order for a stop to be justified at its inception, "[t]he officer, looking at the totality of the circumstances, must be able to form a reasonable suspicion that the individual in question is engaged in or is about to be engaged in criminal activity." *State v. Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111. "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Jason L.*,

2000-NMSC-018, ¶ 20. Finally, we note that, even though Defendant was a passenger, he has standing to challenge the propriety of the initial stop. *Cf. State v. Affsprung*, 2004-NMCA-038, ¶¶ 16-19, 135 N.M. 306, 87 P.3d 1088 (rejecting the notion that a passenger would feel free to leave during a routine traffic stop).

The district court found that Deputy Funes had reasonable suspicion to stop the SUV based on the lateness of the hour, the serious allegations, and the lack of other vehicles in the area. We disagree because, based on the evidence available to the deputy at the time of the stop and all of the surrounding circumstances, we are not convinced that the deputy had a particularized suspicion that the occupants of the SUV were breaking, or had broken, the law.

The report of the shots did not describe a specific model of the vehicle, only a pickup truck, and the district court specifically found that the SUV "did not match the description of the target vehicle." Although Deputy Funes testified that witnesses sometimes confuse SUVs and pickup trucks because they can look similar from the front, there was no suggestion that the unidentified witness actually saw the truck from the front. Furthermore, the location was only vaguely described as somewhere in the mobile home park. *See State v. Eric K.*, 2010-NMCA-040, ¶¶ 3, 11, 24, 148 N.M. 469, 237 P.3d 771 (holding that the officers did not have reasonable suspicion to seize the defendant when the defendant was found walking two blocks from the

6

reported criminal activity, even though the defendant and his companion were the only two individuals in the area); *cf. State v. Watley*, 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct. App. 1989) (upholding a stop in the early morning hours when the defendant was the only traveler in the immediate vicinity of the area of a recently reported rape, and he was traveling on the same road where the witness claimed to have seen a man fleeing wearing a ski mask).

In addition, Deputy Funes admitted he did not see the SUV until approximately eighteen minutes after the shots were reported and, in the interim, he had received a second dispatch indicating that the shots had ceased. He also admitted he did not observe any suspicious behavior before the stop. The driver of the SUV was not driving in an unsafe manner or speeding, and he was not attempting to leave the mobile home park. He further acknowledged that he made no effort to obtain additional, more specific information as to what the witness had seen before stopping the SUV. *Cf. State v. Lackey*, 2005-NMCA-038, ¶¶ 9, 14, 137 N.M. 296, 110 P.3d 512 (holding there was insufficient evidence of reasonable suspicion where the officers merely observed the defendant twice circling the scene of an accident).

Given the lack of any information tying the SUV to the shots fired, except for it being the only vehicle on the road eighteen minutes after shots were fired and its superficial resemblance to a truck, we are not convinced that the stop was justified by

"a particularized suspicion, based on all the circumstances" that someone in that particular vehicle "is breaking, or has broken, the law." *Jason L.*, 2000-NMSC-018, ¶ 20.

The State cites to *State v. Jimmy R.*, 1997-NMCA-107, 124 N.M. 45, 946 P.2d 648, in support of its contention that the stop was justified. However, in that case, there was a report of shots fired by two or three persons "in the vicinity of" a specific address, the only persons in that vicinity were stopped in the alley near the address, and those persons began to walk away when the officer drove up. *Id.* ¶ 2; *see Eric K.*, 2010-NMCA-040, ¶¶ 23-24 (distinguishing *Jimmy R.* because the circumstances in that case involved more than mere proximity).

The State also cites to *State v. Candelaria*, 2011-NMCA-001, 149 N.M. 125, 245 P.3d 69, *cert. denied*, ___-NMCERT-___, ___ P.3d ___ (No. 28,565, Nov. 15, 2010), in claiming that the stop was justified. However, in *Candelaria*, before initiating the stop, the officers knew the vehicle had been involved in a prior investigation, the vehicle fled the place where it was parked when the officers approached and, before stopping the vehicle, the officers followed it long enough to run a license plate check and learn that the license of the vehicle's owner had been suspended. *Id.* ¶¶ 2, 11-15 (holding that the stop was justified because it was reasonable for the officers to suspect that the driver of the vehicle was its owner).

Finally, we note that the district court's comments during the hearing suggest that it was persuaded in part by the deputy's need to "investigate" the purported shots in order to speak with potential witnesses or anyone who might have some information about what happened. However, a general need to "investigate" does not allow officers to order a traffic stop because it fails to provide a reasonable, articulable suspicion that the persons in the vehicle being stopped have committed, or are about to commit, a crime. *See Jason L.*, 2000-NMSC-018, ¶¶ 14-21 (recognizing that, while officers could approach the defendant to question him, they had no right to stop, detain, or seize him in the absence of a "particularized suspicion, based on all the circumstances that [the defendant], the one detained, is breaking, or has broken, the law"); *State v. Williams*, 2006-NMCA-062, ¶¶ 23-25, 139 N.M. 578, 136 P.3d 579 (reversing the district court's denial of the defendant's motion to suppress because the State failed to provide "specific, articulable facts that [the] [d]efendant or an occupant of the vehicle was or was about to be engaging in criminal activity").

In holding that the deputy lacked reasonable suspicion to stop the SUV, we direct the State's attention to this Court's recent decision in *Eric K.* In that case, the State argued that the officers were justified in seizing the child based upon information showing that (1) the officer was investigating the use of a gun in a drug transaction in the area near a local school; (2) the criminal activity occurred minutes

before and within two blocks of where the child was found; (3) the officer saw the child and his companion walking from the direction of the school; (4) the child and his companion were the only people seen by the officer walking in the area; (5) the child and his companion had their hands in their pockets; and (6) after the child saw the officer, he immediately darted into a laundromat. *Eric K.*, 2010-NMCA-040 ¶¶ 19, 23. This Court disagreed and held that the proximity of the child to the alleged criminal events, along with the remainder of the information available to the officers, was insufficient to support the "necessary individualized articulable, reasonable suspicion" to allow the officers to seize the child by telling him to take his hands out of his pockets. *Id.* ¶ 24.

In sum, we hold that the mere appearance of an SUV in the middle of the night in the general area of a possible crime is not enough to constitute reasonable suspicion that the driver or passenger was engaged in criminal activity and, thus, we conclude that the district court erred in finding that the initial stop was lawful. Given that the district court reached the correct result by issuing an order suppressing the cocaine and Defendant's statements, we affirm the district court's order as reaching the correct result albeit for the wrong reason. *Cf. Gallegos*, 2007-NMSC-007, ¶ 26.

## C. Propriety of Protective Frisk

If the initial stop had been justified by Deputy Funes' reasonable suspicion of criminal activity, we would agree with the State that the deputy was entitled to perform a protective frisk for weapons for purposes of officer safety. *See Leyva*, 2011-NMSC-009, ¶ 24 (recognizing that "the scope of a stop may be expanded without violating the Fourth Amendment when an officer has a reasonable suspicion that an individual is armed and dangerous" but underscoring that "the requirement of reasonable suspicion demands objective and articulable observations that indicate further police action is necessary"); *Vandenberg*, 2003-NMSC-030, ¶¶ 4-6, 8-10, 22, 29-33 (holding that the officer's specific observations about the defendants' nervousness and their increasingly hostile and suspicious behavior was sufficient to justify the protective pat-down search for weapons because the observations established "a sufficient degree of articulable suspicion that the person being frisked is both armed *and* presently dangerous"). However, even if the initial stop had been legal and, even if the deputy had been entitled to perform a protective frisk for weapons, we would nonetheless affirm the suppression order because the deputy exceeded the scope of the protective frisk by investigating an item that was clearly not a weapon or any other dangerous object. *See State v. Pierce*, 2003-NMCA-117, ¶ 9, 134 N.M. 388, 77 P.3d 292 ("If a protective search goes beyond that which is

11

necessary to determine whether weapons are present, the fruits of the search are suppressed."); *State v. Flores*, 1996-NMCA-059, ¶ 17, 122 N.M. 84, 920 P.2d 1038 (recognizing that the scope of a search for weapons during an investigatory stop is limited to its protective purpose).

On the issue of a protective frisk for weapons, our Supreme Court recently reiterated:

> An officer may conduct a protective search of a stopped vehicle for reasons of officer safety during a traffic stop . . . . A protective search *is not a search for evidence.* Such a search must be based upon the objectively reasonable belief that the individuals stopped pose a threat to officer safety, and *the search must be limited to its purpose of protecting the officers, and the public, during the stop*.

*Leyva*, 2011-NMSC-009, ¶ 25 (emphasis added) (citations omitted).

Deputy Funes admitted the object did not feel like a weapon, and he never suspected it was a weapon, yet, he continued to investigate the object even after ascertaining it was not a weapon and stopped the protective frisk to ask questions about the object. *Cf. State v. Paul T.*, 1999-NMSC-037, ¶ 18, 128 N.M. 360, 993 P.2d 74 (recognizing that during a protective search for weapons, an officer may remove a bulging item from a suspect's pocket if, after touching the object from the outside, the officer is uncertain whether the item could be a weapon). He also acknowledged that the object was not clearly contraband because he admitted it could have been a balled-up receipt in accordance with what Defendant told him.

As Deputy Funes did not suspect the object was a weapon and acknowledged it was not clearly contraband, he exceeded the scope of the protective frisk when he inquired about the object. *See State v. Ingram*, 1998-NMCA-177, ¶ 7, 126 N.M. 426, 970 P.2d 1151 (noting that a protective search for weapons is unreasonable when it extends beyond ensuring that the person is not armed); *State v. Johnson*, 2010-NMCA-045, ¶ 24, 148 N.M. 237, 233 P.3d 371 (recognizing that if an officer conducting a *Terry* frisk for weapons "knows or should know on first feel that the object is not a weapon, and . . . it is not immediately apparent that the object is contraband," the officer should not be permitted "to engage in continued exploration and manipulation of the object for the purposes of attempting to determine its nature as contraband"). Therefore, we disagree with the State that the deputy engaged in a "limited frisk" and hold that the results of the illegal search were properly suppressed. *See Pierce*, 2003-NMCA-117, ¶ 9 (holding that "[t]he search must be limited to that which is necessary for the discovery of weapons . . . . If a protective search goes beyond that which is necessary to determine whether weapons are present, the fruits of the search are suppressed" (internal quotation marks and citations omitted)).

In responding to Defendant's contention that Deputy Funes exceeded the permissible scope of a protective frisk, the State argued that Defendant consented to the deputy's actions and relied on this Court's decision in *State v. Muñoz*, 2008-

NMCA-090, 144 N.M. 350, 187 P.3d 696, in support of this contention. We are unpersuaded that this Court's opinion in *Muñoz* warrants a conclusion that Defendant voluntarily allowed the deputy to remove the object so as to negate any improper taint.

In *Muñoz*, the defendant was not subject to a protective frisk. Instead, the officers merely asked if he would "please" remove his shoes and empty his pockets while he was standing outside of a bus. *Id.* ¶¶ 20-22. Unlike Defendant in this case, the defendant in *Muñoz* was not being subjected to a pat-down, and he was not being controlled by having his thumbs held behind his back. *See id*. Therefore, unlike Defendant in this case, the defendant in *Muñoz* was not subject to any duress or coercion at the time of the officer's request. *See id.*

Given that Deputy Funes had no right to investigate or inquire about the item that was neither a weapon nor clearly contraband and given that Defendant only told him he could remove the item after the improper inquiry and while being subject to a protective frisk, Defendant's consent to the removal of the cocaine was ineffective because it was tainted by the deputy's use of restraint during the pat-down, the illegal expansion of the search, and the coercive atmosphere surrounding that search. *See State v. Taylor*, 1999-NMCA-022, ¶ 28, 126 N.M. 569, 973 P.2d 246 ("In order for evidence obtained after an illegality, but with the voluntary consent of the defendant, to be admissible, there must be a break in the causal chain from the illegality to the

search." (alterations omitted) (internal quotation marks and citation omitted)), *overruled in part on other grounds by Leyva*, 2011-NMSC-009.

In closing, we reiterate our observation that the district court's order of suppression was not based on a finding that Deputy Funes exceeded the scope of what would otherwise be a permissible pat-down for weapons. However, we may affirm on this alternative ground because it is not unfair to the State for us to do so. *See State v. Granville*, 2006-NMCA-098, ¶ 16, 140 N.M. 345, 142 P.3d 933 (affirming the motion to suppress on grounds other than those relied upon by the district court because "the trial court clearly had an opportunity to rule on the issue and was armed with the legal assertions and facts necessary to do so"). As previously observed, this issue was raised by Defendant in his motion to suppress, and he developed the factual support for this issue during the hearing. Therefore, the State had an opportunity to rebut Defendant's contentions in its response to the motion and during the hearing. Accordingly, we apply the doctrine of "right for any reason" and affirm the suppression order because the deputy's actions exceeded the scope of the protective frisk for weapons. *See id.* ¶ 12; *see also Gallegos*, 2007-NMSC-007, ¶ 26.

**III.    CONCLUSION**

For the reasons set forth above, we affirm the district court's order granting Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**TIMOTHY L. GARCIA, Judge**