Accordingly, the matter of child support is reversed and remanded to the trial court with directions to recalculate child support without granting Monica a health insurance deduction for Andrew. Further, we determine that the trial court did not err in requiring Bryan to submit to random drug testing at Monica's request, but we modify the provision to provide that it should be Bryan's choice whether to submit to a hair follicle drug test or a urinalysis.

AFFIRMED IN PART AS MODIFIED, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.

---

STATE OF NEBRASKA, APPELLEE, V.
JOSHUA D. ROHDE, APPELLANT.
___ N.W.2d ___

Filed May 26, 2015.    No. A-14-379.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.
2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.
3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
4. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.
5. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.
6. **Constitutional Law: Investigative Stops: Appeal and Error.** An appellate court reviews de novo the determination that the community caretaking exception to the Fourth Amendment applied.

7. **Constitutional Law: Search and Seizure: Investigative Stops: Arrests: Probable Cause.** The Fourth Amendment guarantees the right to be free of unreasonable search and seizure. This guarantee requires that an arrest be based on probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity.

8. **Criminal Law: Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** A traffic stop requires only that the stopping officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime.

9. **Investigative Stops: Police Officers and Sheriffs: Probable Cause.** In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account.

10. **Constitutional Law: Police Officers and Sheriffs: Investigative Stops.** The community caretaking exception to the Fourth Amendment recognizes that local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

11. **Constitutional Law: Investigative Stops.** The community caretaking exception to the Fourth Amendment should be narrowly and carefully applied in order to prevent its abuse.

12. **Constitutional Law: Police Officers and Sheriffs: Investigative Stops: Probable Cause.** In determining whether the community caretaking exception to the Fourth Amendment applies, a court should assess the totality of the circumstances surrounding the stop, including all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction.

13. **Constitutional Law: Investigative Stops: Motor Vehicles.** The community caretaking exception to the Fourth Amendment is equally applicable to drivers and passengers or occupants of a vehicle.

Appeal from the District Court for Buffalo County, William T. Wright, Judge, on appeal thereto from the County Court for Buffalo County, Gerald R. Jorgensen, Jr., Judge. Judgment of District Court affirmed.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

Moore, Chief Judge, and Inbody and Pirtle, Judges.

INBODY, Judge.

## I. INTRODUCTION

Joshua D. Rohde appeals the Buffalo County District Court's affirmance of his conviction for driving under the influence of alcohol, first offense. He contends that the district court erred in affirming the county court's denial of his motion to suppress, because the initial stop of his vehicle violated his constitutional rights, and that there was no reason to believe an emergency situation existed or exigent circumstances justified stopping his vehicle pursuant to the community caretaking exception to the Fourth Amendment.

## II. STATEMENT OF FACTS

At approximately 1:45 a.m. on March 16, 2013, Kearney police officer Brad Butler observed a dark-colored Ford Explorer with a female passenger with her head and part of her torso "sticking out of the moonroof of the vehicle." The female passenger was waving her arms, but Butler could not tell what she was waving at or what she was intending to wave at. Butler did not know if she was trying to wave him down, but there was no other traffic in the area. Butler turned his police cruiser around, activated its emergency lights, and conducted a stop of the vehicle for the reason that he felt that the conduct of the female passenger was both unsafe and illegal. Prior to the stop of the vehicle, there was no indication that it was exceeding the speed limit, and the vehicle had its headlights on. Butler made contact with both Rohde, who was driving the vehicle, and the female passenger of the vehicle, neither of whom indicated that they were in need of assistance. Upon further investigation, Butler arrested Rohde for driving under the influence of alcohol. Rohde was charged in Buffalo County Court with driving under the influence, first offense.

On April 5, 2013, Rohde filed a motion to suppress all of the evidence obtained for the reason that the initial stop was not based upon probable cause. He further moved to suppress any statements made by him while in custody and before *Miranda* warnings were given, in violation of his Fifth

Amendment right against self-incrimination. Finally, he moved to suppress the results of the chemical test of his blood for the reason that there was no probable cause to request such test, in violation of his constitutional rights and Neb. Rev. Stat. § 60-6,107 (Reissue 2010).

A suppression hearing was held on July 10, 2013. Butler testified to the facts as previously set forth. Rohde testified in his defense that he was driving a Ford Explorer at around 1:45 a.m. on March 16, 2013, at which point in time a female passenger stood up and extended part of her body through the "sunroof" for about 2 seconds. Rohde testified that the female passenger was standing on the floor of the vehicle and that he could feel her slightly lean against his arm. Rohde testified that at the time, he was driving about 35 to 40 miles per hour.

The county court denied Rohde's motion to suppress, finding that the stop was justified based upon the "general nature of checking welfare" and that "the officer would be remiss in not stopping and finding out what's going on." The county court also reasoned that it is "reasonable to assume that somebody could have been trying to signal [the officer] and then got pulled back into the car by their abductor."

A stipulated trial was held on August 13, 2013, with Rohde preserving the issues raised in his motion to suppress. The parties stipulated that Rohde's blood was tested on March 22 for alcohol content, which test showed an alcohol content of .15 grams of alcohol per 100 milliliters of his blood, and also that the blood sample was sent to a forensic laboratory in Omaha, Nebraska, on May 20 to be tested for alcohol content and that said test showed an alcohol content of .15 grams of alcohol per 100 milliliters of his blood.

The county court found Rohde guilty of the charged offense and, thereafter, sentenced Rohde to 9 months' probation, a driver's license suspension of 60 days, a $500 fine, and other conditions. Rohde timely appealed his conviction and sentence to the Buffalo County District Court. The district court affirmed Rohde's conviction and sentence, finding that the community caretaking exception applied to justify the stop of

Rohde's vehicle in that the circumstances of a female passenger "protrud[ing] the upper half of her body through a moonroof or sunroof [of a vehicle] and wav[ing] momentarily" as an officer passed were at least sufficient to suggest an effort by an occupant of the vehicle to wave down a police officer, which effort was thwarted when she was almost immediately pulled back into the vehicle. These circumstances are sufficient to create a concern for the welfare of the female passenger. Further, the district court noted that "the simple fact that an occupant of the vehicle is protruding, even momentarily, half of her body through the roof of a vehicle traveling at 35 to 40 miles per hour creates a significant enough safety concern that an inquiry as to the welfare [of the occupant] is appropriate." Rohde has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

On appeal, Rohde's assignments of error, consolidated and restated, are that the district court erred in affirming the county court's denial of his motion to suppress because the initial stop of his vehicle violated his constitutional rights and because there was no reason to believe that an emergency situation existed or that exigent circumstances justified stopping his vehicle pursuant to the community caretaking exception.

## IV. STANDARD OF REVIEW

[1-3] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014); *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Piper, supra*; *State v. McCave, supra*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *State v. Piper, supra*; *State v. McCave, supra*.

[4-6] When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014); *State v. McCave, supra*. In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Piper, supra*; *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). Regarding historical facts, we review the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Piper, supra*; *State v. Matit, supra*. Likewise, we review de novo the determination that the community caretaking exception applied. See *State v. Bakewell*, 273 Neb. 372, 730 N.W.2d 335 (2007).

## V. ANALYSIS

### 1. Reasonable Suspicion

Rohde claims that prior to the stop of his vehicle, Butler lacked reasonable suspicion to believe that Rohde was involved in criminal activity.

[7-9] The Fourth Amendment guarantees the right to be free of unreasonable search and seizure. *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014). This guarantee requires that an arrest be based on probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity. *Id*. A traffic stop requires only that the stopping officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. *Id*. In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account. *Id*.

In the instant case, there was no evidence of speeding, weaving, or other traffic infraction justifying a stop of Rohde's vehicle; nor was there any evidence that Rohde or his passenger had committed or was committing a crime other than

the possible commission of a seatbelt offense, for which enforcement can only be accomplished as a secondary action and is not justification for the stop of Rohde's vehicle. See Neb. Rev. Stat. §§ 60-6,270 and 60-6,271 (Reissue 2010). Thus, we must consider whether the community caretaking exception was applicable to this case.

### 2. COMMUNITY CARETAKING EXCEPTION

We next address Rohde's claim that the district court erred in affirming the county court's finding that the community caretaking exception applied in this case. He contends that the community caretaking exception has not been applied in Nebraska to justify the stop of a vehicle where the person in need of the "care" is a passenger, not the driver. Further, he contends that even if this court does find that the community caretaking exception is applicable to passengers, the circumstances in the instant case did not justify its use, because the evidence did not show that the passenger in this case demonstrated a need for any kind of assistance or care.

[10,11] The Nebraska Supreme Court adopted the community caretaking exception to the Fourth Amendment in *State v. Bakewell*, 273 Neb. 372, 730 N.W.2d 335 (2007). The exception recognizes that

> "[l]ocal police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

*Id.* at 376, 730 N.W.2d at 338, quoting *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). The exception should be narrowly and carefully applied in order to prevent its abuse. *State v. Bakewell, supra.*

[12] In determining whether the community caretaking exception to the Fourth Amendment applies, a court should assess the totality of the circumstances surrounding the stop, including all of the objective observations and considerations,

as well as the suspicion drawn by a trained and experienced police officer by inference and deduction. *State v. Bakewell, supra*; *State v. Smith*, 4 Neb. App. 219, 540 N.W.2d 374 (1995).

### (a) Application of Community Caretaking Exception in Nebraska

The community caretaking exception has been considered in a limited number of reported appellate cases in Nebraska. The community caretaking exception was found to apply in two cases, one case in which the vehicle was being driven in an erratic manner, *State v. Bakewell, supra*, and one in which the vehicle was stopped in traffic, *State v. Smith, supra*. The community caretaking exception was considered, and found not to apply, in two other cases: *State v. Moser*, 20 Neb. App. 209, 822 N.W.2d 424 (2012) (in postconviction proceeding alleging ineffective assistance of counsel for failing to file motion to suppress, where vehicle was stopped because of shattered windshield, community caretaking exception did not apply, there having been no evidence that vehicle had recently been involved in accident and no sense of urgency to check on welfare of driver), and *State v. Scovill*, 9 Neb. App. 118, 608 N.W.2d 623 (2000) (officer's search of glove box of car following one-vehicle accident was not justified by community caretaking exception).

In *State v. Bakewell, supra*, the officer observed a vehicle traveling on a highway at 3:15 a.m. where there was little or no other traffic present. The vehicle stopped or slowed considerably five times within approximately 90 seconds, with the vehicle eventually pulling off onto the shoulder of the road. The Nebraska Supreme Court found that considering the totality of the circumstances, it was reasonable for the officer to conclude that the driver was lost or that something was wrong with the driver, with his vehicle, or inside the vehicle, and because of the early hour of the morning, it was reasonable for the officer to assume that his assistance might be welcomed. Thus, under the court's de novo review of the

record, the Supreme Court concluded that the officer's actions in approaching the vehicle fell within the community caretaking exception.

In *State v. Smith, supra*, an officer observed a pickup in an intersection, which pickup had not moved for several minutes. The officer pulled up behind the pickup and observed that the brake lights were on and that there was no activity in the pickup. The officer was justified in believing that an exigent circumstance might exist and had good reason to make contact with the driver and to provide the driver aid, if necessary. Thus, the community caretaking exception was applicable.

In both of these cases where the community caretaking exception was applied, the individual potentially requiring assistance was the driver. Nebraska case law has not addressed a situation like that presented in the instant case, where the individual potentially requiring assistance is a passenger or occupant in the vehicle.

Rohde argues that since Nebraska has applied the community caretaking exception only when the individual requiring assistance was the driver of the vehicle, there is a question as to whether the community caretaking exception applies to a passenger in a vehicle. This question is an issue of first impression in Nebraska. Thus, we turn to other jurisdictions for guidance.

### (b) Community Caretaking Exception
### Applied to Occupants in
### Other Jurisdictions

Several states have had the opportunity to consider whether the community caretaking exception applies to passengers, or occupants, in a vehicle. We review two cases where courts have determined that the community caretaking exception applied to justify a stop where the individual potentially requiring assistance was a passenger or occupant in the vehicle, *State v. Crawford*, 659 N.W.2d 537 (Iowa 2003), and *State v. Moore*, 129 Wash. App. 870, 120 P.3d 635 (2005).

### (i) Cases Where Community
### Caretaking Exception Applied
### to Justify Stop

#### a. *State v. Crawford*

For example, in *State v. Crawford*, 659 N.W.2d at 543, the Iowa Supreme Court held that the stop of the defendant's flatbed truck was reasonable under the community caretaking exception to the warrant requirement where, at the time the officer stopped the defendant's truck, the officer had received a report that a male subject had taken "'some pills,'" was agitated and physically aggressive to a woman in her apartment, then had abruptly left in a flatbed truck; the officer did not know if the male subject was driving the truck; and the officer did no more than was necessary to determine whether the male subject, who was the defendant's passenger, was in need of assistance.

The Iowa Supreme Court noted that in determining the applicability of the community caretaking exception, "a court determines reasonableness by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen." *Id*. at 542. "This balancing requirement to determine reasonableness requires an objective analysis of the circumstances confronting the police officer: Under the circumstances, would a reasonable person have thought an emergency existed?" *Id*. In order to establish "'reasonableness,'" the burden falls on the state to show "'specific and articulable facts'" indicating that the officer's actions were proper. *Id*. Additionally, "'the scope of the entry and search "must be limited to the justification thereof, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance."'" *Id*., quoting *State v. Carlson*, 548 N.W.2d 138 (Iowa 1996).

#### b. *State v. Moore*

In another case finding that the community caretaking exception applied to justify a stop, the Washington Court of

Appeals found that a police officer's initial stop of an auto-
mobile that was registered to an owner who was reported
as "'missing/endangered'" was justified under the commu-
nity caretaking exception to determine if the person reported
as missing/endangered was in the car. *State v. Moore*, 129
Wash. App. 870, 874, 120 P.3d 635, 637 (2005). The missing/
endangered listing did not provide a physical description of
the owner of the vehicle. During the officer's brief detention
of the vehicle's driver and passengers, the officer was unable
to fully dispel her concern whether any passenger was the
person reported as missing/endangered. In order to do so, the
officer asked each of the occupants of the vehicle for identifi-
cation. The officer's interaction with the defendant, who was
one of the passengers, indicated that he was the subject of an
outstanding felony warrant. The court determined that the brief
detention and police interaction with the defendant were also
valid based upon the community caretaking exception.

The Washington Court of Appeals noted that in determining
the reasonableness of the police intrusion, the court considers
the totality of the circumstances. *State v. Moore, supra*. The
court further stated that

> [w]hether a stop [made pursuant to the] "community
> caretaking" [exception] is "reasonable" requires balanc-
> ing "the competing interests involved in light of all the
> surrounding facts and circumstances," particularly the
> "individual's interest in freedom from police interference
> against the public's interest in having the police perform
> a 'community caretaking function.'"

*Id*. at 880, 120 P.3d at 640, quoting *State v. Acrey*, 148 Wash.
2d 738, 64 P.3d 594 (2003). The court noted that when "'an
officer believes in good faith that someone's health or safety
may be endangered . . . public policy does not demand that
the officer delay any attempt to determine if assistance is
needed and offer assistance while a warrant is obtained.'"
*State v. Moore*, 129 Wash. App. at 881, 120 P.3d at 640, quot-
ing *State v. Gocken*, 71 Wash. App. 267, 857 P.2d 1074 (1993).
Further, "'the officer could be considered derelict by *not* act-
ing promptly to ascertain if someone needed help.'" *State v.
Moore*, 129 Wash. App. at 881, 120 P.3d at 640 (emphasis

in original), quoting *State v. Gocken, supra*. However, a stop initiated pursuant to the community caretaking exception must end when the reasons for initiating the encounter are fully dispelled. *State v. Moore, supra*.

*(ii) Cases Where Community Caretaking
Exception Did Not Apply
to Justify Stop*

In other cases, courts have recognized the community caretaking exception and analyzed the exception in reference to a passenger or occupant in a vehicle, but have found that the particular facts of the case did not support application of the community caretaking exception.

a. *Wright v. State*

In *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999), the Texas Court of Criminal Appeals recognized the community caretaking exception and noted that the exception allows police officers, as part of their duty to "'serve and protect,'" to stop or temporarily detain an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help. In determining whether an officer acted reasonably in stopping an individual to render assistance, Texas courts consider these nonexclusive factors, in light of the facts available to the officer when he conducts the stop of the defendant: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone, had access to assistance independent of that offered by the officer, or both; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Id*. On remand, the intermediate appellate court applied these four factors and found that the exception did not apply where a deputy stopped a car on a highway at 4 a.m. in order to make sure that a passenger was all right after he saw the rear passenger lean out an open window and vomit. The appellate court found that the deputy did not act reasonably in stopping the vehicle, because the passenger was

> in the rear seat of a car that was being driven in a lawful
> manner on a public highway. [The passenger] appeared

to be having some gastric distress, but in addition to the driver, the other passenger in the car could have aided and assisted [him]. Nothing indicated that [the passenger's] condition was any more serious than an upset stomach.

*Wright v. State*, 18 S.W.3d 245, 247 (Tex. App. 2000).

### b. *Andrews v. State*

Similarly, in *Andrews v. State*, 79 S.W.3d 649 (Tex. App. 2002), the Texas Court of Appeals found that a stop was not justified by the community caretaking exception where a trooper saw the defendant's car pull off to the shoulder of the interstate at 1 a.m. and saw a passenger lean through an open passenger door and appear to vomit. After the passenger shut her door, the defendant began to drive away. The trooper stopped the defendant's car "'to make sure everything was okay.'" *Id.* at 650. The Texas court noted that although the stop occurred in a location that was on a somewhat isolated section of interstate and the passenger appeared to be having some gastric distress, the driver could have aided the passenger, neither of the car's occupants indicated that they needed assistance, and nothing supported a reasonable belief that the passenger was a danger to herself or others.

### c. *Gibson v. State*

Another Texas case which considered the applicability of the community caretaking exception and applied the four non-exclusive factors set forth in the successive opinions in *Wright v. State*, *supra*, for courts to consider in determining whether an officer acted reasonably in stopping an individual to render assistance is *Gibson v. State*, 253 S.W.3d 709 (Tex. App. 2007). Therein, a mother who was concerned that her 15-year-old daughter, C.W., had not returned home by 11:15 p.m. from a football game contacted police, told them that C.W. had left the game at 10:20 p.m. with the defendant and might be in a blue 1989 "'Pontiac Oldsmobile [sic],'" and gave officers the license plate number. *Id.* at 712. At approximately 11:45 p.m., an officer spotted a vehicle matching the description given by C.W.'s mother. Although the officer could not identify the

vehicle's occupants or tell how many occupants were in the vehicle, he conducted a stop of the vehicle and located C.W. as a passenger.

In applying the four factors, the *Gibson* court noted that the first and most important factor to be considered is the nature and level of the distress exhibited by the individual. Although this first factor is entitled to the greatest weight, it is not always dispositive. *Id*. The three remaining factors—the location of the individual in distress, whether the individual was alone or had access to assistance other than that offered by the officer, and the extent to which the individual, if not assisted, posed a danger to himself or others—help to give more definition to the first factor and may reveal a particular level of distress is more or less serious depending on the presence or absence of these factors. *Id*.

In applying the first factor, the court determined that the evidence was insufficient to establish that C.W. exhibited a nature and level of distress sufficient to independently justify the stop of the defendant's vehicle as an objectively reasonable exercise of the community caretaking function, because the only evidence of the nature and level of C.W.'s distress at the time the defendant's vehicle was stopped was that C.W. was no more than 1½ hours late and that for some unstated reason, C.W.'s mother did not want her in a vehicle with the defendant. Further, the second factor, location of the individual in distress, mitigated against C.W.'s being in sufficient distress to justify the stop, because the officer stopped the defendant's vehicle a couple of houses away from C.W.'s home, the proximity of which reasonably implies that the defendant was in the process of taking C.W. home at the time of the stop. The third factor, whether the individual in distress was alone or had access to assistance other than that offered by the officer, did not support the stop because the officer could not identify any of the individuals in the defendant's vehicle or the number of individuals in the vehicle. The fourth factor, the extent to which the individual in distress, if not assisted, posed a danger to himself or others, also weighed against the stop, because there was no evidence that C.W. was placed in danger by getting a ride home from the defendant.

Thus, the court found, after considering all of the factors in light of the totality of the circumstances, that the evidence failed to establish that the stop of the defendant's vehicle was objectively reasonable under the community caretaking exception. *Id*.

### d. *People v. Madrid*

The California Court of Appeal held that the community caretaking exception did not apply to a situation where an officer conducted a stop of a vehicle because he believed a passenger might be ill. *People v. Madrid*, 168 Cal. App. 4th 1050, 85 Cal. Rptr. 3d 900 (2008). The only facts articulated by the officer as grounds for the vehicle stop were that the passenger had walked to the vehicle with an unsteady gait, at one point using a nearby shopping cart to steady himself to avoid falling, and appeared to be sweating. However, the passenger was able to walk 50 feet to the appellant's vehicle and get into the passenger seat without assistance; if the passenger needed assistance, the appellant could have provided that assistance; and neither the passenger nor the driver indicated that they were in need of additional help. Nothing about the position and location of the passenger, i.e., sitting in the passenger seat of a vehicle being driven lawfully through a shopping center parking lot, suggested that the passenger was in need of additional assistance, and the facts did not support a reasonable conclusion that the passenger presented a danger to himself or others.

The court articulated that the appropriate standard under the community caretaking exception is one of reasonableness: "'Given the known facts, would a prudent and reasonable officer have perceived a need to act in the proper discharge of his or her community caretaking functions?'" *People v. Madrid*, 168 Cal. App. 4th at 1056, 85 Cal. Rptr. 3d at 905, quoting *People v. Ray*, 21 Cal. 4th 464, 981 P.2d 928, 88 Cal. Rptr. 2d 1 (1999). In a determination whether an officer acted reasonably, the officer must be able to point to specific and articulable facts from which he concluded that his action was necessary. *People v. Madrid, supra*. Stated another way, the community caretaking exception applies when police officers

"'acted reasonably to protect the safety and security of persons and property[,]' . . . that is, when 'a prudent and reasonable officer [would] have perceived a need to act in the proper discharge of his or her community caretaking functions.'" *People v. Madrid*, 168 Cal. App. 4th at 1058, 85 Cal. Rptr. 3d at 906, quoting *People v. Ray, supra*.

## e. *Lewis v. State*

In *Lewis v. State*, 398 Md. 349, 353, 920 A.2d 1080, 1082 (2007), while out looking for a rape suspect described in a "'flyer,'" officers stopped a sport utility vehicle after they observed the vehicle parked on the side of the road with a male driver and a woman passenger who started "acting nervously, abruptly pushing their hands down under the vehicle's console." Although the State argued that the stop was justified under the community caretaking exception to protect the general public because police were looking for a suspect wanted in connection with a rape and to protect the female passenger because the officer thought a rape could be in progress, the appellate court agreed with the suppression hearing judge's assessment that "'there was utterly no evidence whatsoever or no reason to think there was any possible attempted rape going on.'" *Id*. at 373, 920 A.2d at 1094. The appellate court noted that the parties disagreed on whether Maryland had recognized the community caretaking exception, but regardless of whether the exception had been recognized or not, the exception was not applicable under the facts of the case.

## f. Other Cases

In *State v. Lackey*, 137 N.M. 296, 110 P.3d 512 (N.M. App. 2005), the New Mexico Court of Appeals found that an officer's stop of a vehicle in which the defendant was a passenger was not justified by the community caretaking exception where the vehicle slowly drove past the scene of an accident two times, because there was no specific articulable safety concern about the defendant or the vehicle in which he was riding.

In *Majors v. State*, 70 So. 3d 655 (Fla. App. 2011), a bank manager notified police that a customer was acting strangely,

attempting to withdraw a large amount of money, and wanted the check made payable to the driver of a vehicle parked outside the bank and that the customer kept going back and forth between the vehicle and the bank. The Florida District Court of Appeal held that the community caretaking exception did not apply to justify the stop because, if the officers intended to stop the vehicle to check on the safety of its occupants or any person its occupants may have been threatening, the stop would have been based on sheer speculation, rather than articulable facts related to public safety.

### (c) Application to Instant Case

[13] As the aforementioned cases establish, it is accepted in other jurisdictions that the community caretaking exception is equally applicable to drivers and passengers or occupants of a vehicle. We now hold that in Nebraska, the community caretaking exception is likewise equally applicable to drivers and passengers or occupants of a vehicle. Having found that the community caretaking exception applies to passengers, we now proceed to consider whether the exception is applicable to the facts of the instant case.

In the instant case, Butler observed a female passenger lift "the upper half of her body through [the] moon-roof" of Rohde's vehicle and briefly wave both of her arms before disappearing back into the vehicle. It was approximately 1:45 a.m., and there was no other traffic in the area. Butler could reasonably have concluded that there was a high level of distress being displayed by the female passenger, that she was attempting to flag him down to obtain his assistance, and that she was pulled back into the vehicle by the driver. Under these circumstances, the nature and level of distress exhibited here by the female passenger were such as to, and high enough to, necessitate an investigation. Other factors—location, access to assistance, and the extent to which she would, without assistance, present a danger to others—also support the reasonableness of Butler's actions. The passenger's action of waving, which a reasonable person could interpret as an attempt to flag Butler down for assistance, indicated a high level of distress signifying that the passenger may have been

in danger. Butler had no way of determining whether or not the passenger was in need of assistance without conducting a stop of Rohde's vehicle, and he was not required to delay an attempt to determine if assistance was needed in order to obtain a warrant and, in fact, could have been considered derelict had he failed to act promptly to ascertain if the passenger was in need of assistance. See *State v. Moore*, 129 Wash. App. 870, 120 P.3d 635 (2005). Thus, considering the totality of the circumstances surrounding the stop, it was reasonable for Butler to stop Rohde's vehicle to determine if his female passenger was in need of assistance and the community caretaking exception justified the stop of Rohde's vehicle.

## VI. CONCLUSION

In sum, having determined that the community caretaking exception also applies to passengers or occupants in a vehicle and that it applied in the instant case to justify the stop of Rohde's vehicle to check on the welfare of the female passenger, we affirm Rohde's conviction and sentence.

Affirmed.